(C. D. 1734)

COLONIAL COMMERCE CO., LTD.
P. JOHN HANRAHAN, INC. } *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided November.9, 1955)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* and *Eugene F. Blauvelt* of counsel) for the plaintiffs.

*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector* and *William J. Vitale*, trial attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: An importation of what is described as rubbed English sage was imported from England and assessed for duty purposes as ground sage at 3 cents per pound under paragraph 781 of the Tariff Act of 1930. Plaintiffs contend that the merchandise is properly dutiable as unground sage at 1 cent per pound under the same paragraph.

The provisions of the statute, insofar as pertinent, are as follows:

PAR. 781. Spices and spice seeds: * * * sage, unground, 1 cent per pound; ground, 3 cents per pound; * * *.

An official sample of the merchandise was admitted in evidence as exhibit 2. Plaintiffs presented the testimony of one witness, obtained by deposition (collective exhibit 1), a partner in the firm of herb driers and processors for the culinary and medicinal trades, which firm shipped the merchandise here in suit. From his testimony, it appears that this sage was purchased green from farmers in England and, after processing, consisted of dry rubbed leaf particles. He described the method of processing as follows:

* * * The sage is washed, cut in a silage cutter and then placed on the drying trays. Air at 130 degrees Fahrenheit is passed through the material for three and a half hours until the moisture content is reduced to eight to nine per cent. The material is then passed through an adaptation of a threshing machine to remove the gross stalks. The residue of leaf and fine stalk is then fed into a machine consisting of a horizontal cylinder made either of wire mesh or punched steel plate with apertures one-eighth inch in diameter. In this cylinder, brushes rotate from a central axis. These are set to convey the material slowly through the cylinder, and, by brushing, the leaf particles are forced through the apertures in the cylinder while the stalks continue and fall out at the end of the cylinder. This results in much the same process as if a man took the material and rubbed it through a hand-sieve with the same apertures. The rubbed leaf falling through the apertures of the cylinder is sifted twice to remove any stalk that may have fallen endways through the apertures. The material is then bagged up for sale.

In describing the action of the machine used to obtain ground sage, this witness stated:

The leaf material, after passing through the threshing machine so that gross stalk is removed, is put through a hammer mill or disintegrator in which very high speed swinging hammers beat the material against steel screens in which there are

apertures varying between one-thirty-second inch and one-sixty-fourth inch. No material can escape unless it passes these apertures. The product from this machine is then put under edge runner granite stones weighing three tons each which run round on a granite stone bed and have a twisting, grinding action producing a powder which passes a 120 (one hundred twenty) mesh silk screen. Any returns from the screen are again ground until they do pass the screen. This powder is collected and put up in kegs or paper-lined sacks for sale. I think I ought to go back to the rubbing machine and say that those brushes rotate at 140 revolutions per minute, and in the case of the hammer mill it is perhaps 2,000 revolutions per minute.

This witness produced a sample of rubbed English sage, similar to that above described, a representative sample of ground sage, and a representative sample of natural sageleaf. These were marked, respectively, as exhibits A, B, and C. He testified that the hand-rubbing process in respect to sageleaves has been in effect for many centuries; by machine, perhaps 150 years; that the grinding process has been in effect probably 150 years in manufacturing and in the home much longer.

· The witness further testified that both rubbed sage and powdered sage are used as a spice for flavoring food and that the flavor in rubbed sage is stronger, and the granules can be mixed more easily with meat in food products than powder, which latter form is inclined to "go into wads."

On behalf of the defendant, three witnesses were called, whose testimony was substantially as follows:

Mr. Victor E. Figlar, vice president of a firm, which he described as "spice house, grinders and importers," has had long experience in all the branches of the business, including buying, selling, and milling. During the course of such experience, he had seen sage milled and ground and recognizes the difference between unground sage and ground sage. He testified that the resultant product of a process, such as the instant merchandise has been subjected to, would be a manufactured product which "we" consider ground or rubbed. In answer to the question whether the terms "ground" and "rubbed" are used synonymously in the industry, he stated that "it is a degree of grind. That is the way we buy it." On cross-examination, he stated that he would consider rubbed sage a coarse grind. Upon being shown the official sample (exhibit 2), he stated that it is a very coarse grind, "or we would call it a coarse rub." After an inspection of exhibit B, which was admitted in evidence as part of plaintiffs' collective exhibit 1 as a representative sample of ground sage, he stated that he would describe that as a powdered sage "very fine ground" and that it is ground sage. Exhibit A, he described as a coarse grind rubbed sage.

Defendant's second witness described his business as the spice grinding and importing business. His experience extended over 35

years, during which time he has bought and sold spice, including English sage. He also had produced ground spices. He stated that sage, which had undergone the process to which the imported commodity had been subjected, would be ground sage; that there is a fine grind sage as well as a rough grind. He considered the imported commodity, as represented by exhibit 2, to be a ground sage, which he would call rubbed sage, denoting a rough grind. On cross-examination, this witness stated that there is no substantial difference between the process of obtaining rubbed English sage and ground sage; it is just a matter of setting the mill. He described exhibit B as powdered sage, which is really a ground sage, but finely powdered. As to the difference in the two processes, viz, producing rubbed sage and producing powdered sage, it is a matter of setting the mill.

Defendant's third witness, with an experience of from 4 to 5 years in the spice business, being presently engaged in supervising grinding and cleaning of spices, including sageleaves, stated that the resultant product of a process, such as that to which the instant commodity has been subjected, is a grind. Upon being shown the official sample of the instant product, he stated that, in his opinion, it is a ground sage. On cross-examination, he testified that exhibit B is also a ground sage, a fine grind; that exhibit A is a rubbed sage; that the official sample, exhibit 2, appears to be the same as exhibit A; and that he would consider exhibit 2 a rubbed sage.

On redirect examination, he described the term "rubbed" as a grind, a coarser grind than the powdered; that it is just a matter of running over a mill. "If you want it rubbed you put in a larger perforation plate, or if you are using a nutrition mill you will bring your plates farther apart, put the size screen in that you want." The term "rubbed" denotes a coarse grind, which he described as "fluffy."

The Century Dictionary defines "grind" as:

To break and reduce to fine particles by pounding, crushing, or rubbing, as in a mill or a mortar, * * *.

An examination of earlier tariff acts discloses that, in providing for spices, Congress used the term "ground or powdered." See paragraph 96, Tariff Act of 1883; paragraph 326, Tariff Act of 1890; paragraph 235, Tariff Act of 1894. The acts of 1890 and 1894 specifically provided for "sage" under the general heading of spices, ground or powdered. In the acts of 1897 and 1909, "sage" was provided for, without descriptive words (pars. 287 and 298, respectively). The descriptive terms "ground" and "unground" were first introduced in the act of 1913 (paragraph 235) and carried into the acts of 1922 (paragraph 779) and of 1930 (paragraph 781, *supra*). Diligent search has failed to disclose the reason for the change.

In an early case, reported in T. D. 26374, G. A. 6045, which was affirmed in *Frame & Co.* v. *United States*, 143 Fed. 692, the commodity involved consisted of a residuum from the process of decorticating the pepper berry, which, as stated in the opinion, had not been subjected to any grinding process but, nevertheless, was in a powdery condition. The collector had assessed the merchandise under the provision for "spices not specially provided for." That case arose under the act of 1897, in which the *eo nomine* provision for pepper was limited only by the term "black or white, * * * when unground," paragraph 667, under which the importer claimed free entry. There, the only question for decision was whether or not the article was ground. In sustaining the collector's classification, excluding the commodity from the provision for unground pepper, the Board of General Appraisers stated:

The dictionary definition of grinding is to reduce to fine particles or powder by crushing and friction. The Board has said, "grinding implies the process of reducing to fine particles or pulverization." *In re* Welton, G. A. 2343 (T. D. 14551). We do not think it matters whether the commodity is reduced to a fine powder by a system of decortication, or by trituration, or what is more generally known as grinding. In either event, if it is reduced to a fine condition or powder, we think it must be considered to have been ground.

Primarily, the instant merchandise appears to be known as rubbed sage, although some of the witnesses stated that it was a coarse grind. The record shows some contradiction in the testimony. Whereas plaintiffs' witness, in testifying as to the methods used in order to obtain rubbed sage and ground sage, described two separate machines, defendant's witness Jungbluth stated that there was no difference in the two processes, that "today we have modern mills," and that it is "just a matter of setting the mill." The court is without information as to whether the "modern mills" were in use at the time of the enactment of the Tariff Act of 1930.

Both the sample and the evidence show that the instant commodity has been reduced not "to a fine condition or powder," but to a coarse condition. Therefore, it would not fall within the ruling in the *Frame* case, *supra*.

It is noted that Congress has used the terms "ground" and "unground," rather than "ground" and "whole." Whether the legislative body considered all unground spices to be whole, or whether it meant to include under "unground" spices those that had been processed in some way, but not "ground," we do not decide.

Upon the record, including the samples in evidence, we find that plaintiffs' claim that the sage here involved is not ground is well taken and it is hereby sustained. Judgment will be rendered accordingly.